DECISION
Plaintiff appeals Defendant's determination of the real market value of Plaintiff's property, identified as Account 461921 (subject property), for tax year 2010-11. A trial in the above-entitled matter was held in the Oregon Tax Courtroom, Salem, Oregon, on July 18, 2011. Plaintiff appeared on his own behalf. Jodi Bradley (Bradley), residential property appraiser for Yamhill County Assessor, appeared on Defendant's behalf.
Plaintiff's Exhibits 3, 4, 6, and 10 were received without objection. Defendant's Exhibits A, B, C, and D were received without objection.
 I. STATEMENT OF FACTS
The subject property is a two story, approximately 5,100 square foot "Tudor-style" home located on 2.5 acres of land in a suburban neighborhood in Yamhill County. (Def's Ex A at 2, 4, 6, 12). The ground floor features "a living room, dining room, kitchen with eating nook, family room, office, den, [half-]bath, and utility room." (Id. at 6.) The second story "consists of four bedrooms, three full baths, and [a] bonus room." (Id.) The subject property also includes a "daylight basement" with a "family room, full bath, and sauna." (Id.) The subject property was custom built in 1992 and is of average physical condition. (Id. at 2.) It has views of the Willamette River and the Oregon coastal mountain range. (Id. at 4-5.) *Page 2 
Plaintiff purchased the subject property from Deutsch Bank National Trust Company (Bank) on August 4, 2010, paying $535,000. (Ptf's Compl at 3; Def's Ex C at 10.) Plaintiff testified that after his purchase he added "a new roof" to the subject property, "since [the old roof] was leaking" when he moved in. He testified that his cost to repair the roof was $15,000, and that to date he has spent a total of $25,000 on repairs. The subject property's real market value on the tax roll as of the January 1, 2010, assessment date was $983,157. (Ptf's Compl at 3; Def's Ex B at 4.)
Plaintiff filed a petition to appeal the subject property's real market value to the Board of Property Tax Appeals (BOPTA), which dismissed Plaintiff's petition as untimely. (Ptf's Compl at 4.) Plaintiff timely appealed BOPTA's Order on March 31, 2011. (Id. at 1.) Plaintiff, who is not a licensed real estate agent, broker, or an appraiser, determined the subject property's real market value to be $596,525. His determination was supported by Exhibit 10, consisting of Defendant's sales data taken from both distressed and arm's-length sales of residential property in Yamhill County. (Ptf's Ex 10.) The parties agree that Plaintiff purchased the subject property in a distressed sale. Plaintiff also presented evidence that the subject property had a listing "arm's length" price of $795,000 before title was transferred to Bank. (Ptf's Ex 6.) Plaintiff testified that at the time of that listing, the subject property "had received no offers, and had been on the market for 652 days at that point." Plaintiff testified that "in the current market, if someone were to offer us $700,000 [for the subject property], we'd probably move out in a week." He further remarked that he would entertain offers in the low-to mid-$600,000s.
Defendant requested that this court dismiss Plaintiff's Complaint for lack of jurisdiction because Plaintiff did not make a timely appeal to BOPTA. (Def's Answer at 2.) In the alternative, Defendant requested that this court accepts it determination that the subject *Page 3 
property's real market value is $843,977. Bradley testified that, as of June 21, 2011, she prepared a "full appraisal" report for the subject property. Her appraisal report analyzed five comparable sales of residential properties located on the Willamette River that sold before January 1, 2010. (Def's Ex A at 10, 12-13.) Bradley time adjusted those comparable sales to the assessment date and made adjustments for differences between the comparable properties and the subject property. (Id. at 16-17.) Bradley noted some "discrepancies" between her June 21, 2011, report and Defendant's initial appraisal report, testifying that the main difference was the omission in Defendant's initial report of a bonus room in the subject property's garage. (Id. at 6.) Bradley testified that, if the court accepted Defendant's determination of real market value, Plaintiff would not receive a property tax refund because the subject property's maximum assessed value is less than Defendant's determined real market value and "there is no compression" applicable to the subject property.
Bradley testified with reference to Exhibit D, a scatter plot and line graph of the distressed and arm's-length sales data contained in Exhibit B. Her testimony focused on the relationship between the linear presentation of distressed sales and the arm's-length sales and the lack of intersecting lines for the two different types of sale. Bradley commented that "if those lines ran together, [the distressed sales] market [would be] something that we'd look at." Bradley did not include any distressed sales in her comparable sales analysis, because "currently, statistically, the county does not look at [distressed sales] as [representing the] market." Plaintiff rebutted, stating that those two types of sales can be "reconciled" by adding "about 11 percent" to the "distressed sale prices." *Page 4 
 II. ANALYSIS
A. Jurisdiction
ORS 305.288(1)[1] allows this court to order a change to the tax roll for the current tax year and the two immediately prior tax years if a property is both "used primarily as a dwelling * * * and was and is a single-family dwelling [and] * * * the difference between the real market value of the property for the tax year and the real market value on the assessment and tax roll for the tax year is equal to or greater than 20 percent." The subject property is a single-family dwelling. (Def's Ex A at 6.) Plaintiff's requested real market value of $596,525 is a 39.4 percent reduction to the subject property's $983,157 real market value on the 2010-11 tax roll. (Ptf's Compl at 5.). Because Plaintiff's requested relief meets the statutory requirements of ORS 305.288(1), this court has jurisdiction.
B. Real Market Value
The issue before this court is the subject property's real market value for tax year 2010-11. "Real market value is the standard used throughout the ad valorem statutes except for special assessments."Richardson v. Clackamas County Assessor, TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing Gangle v. Dept. of Rev.,13 OTR 343, 345 (1995)). ORS 308.205(1) defines the real market value of both real and personal property as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller [in exchange for the property], each acting without compulsion in an arm's-length transaction *Page 5 
occurring as of the assessment date for the tax year." OAR 150-308.205-(A)(2)(a) sets out three "approaches" that must be considered when determining the real market value of property: the sales comparison approach, cost approach, and income approach.[2]See ORS 308.205(2).
Plaintiff initially relied on the subject property's August 4, 2010, sales price to determine a real market value of $535,000. (Ptf's Compl at 3.) Because Plaintiff purchased the subject property in a distressed sale, he attempted to reconcile that type of sale with an "arm's-length transaction" described in ORS 308.205(1). He compared numerous distressed and arm's-length sales of "single family residences above 1500 square feet" within Yamhill County. (Ptf's Ex 10.) He testified that an arm's-length sales price equaled a distressed sales price increased by about 11 percent. The real market value that Plaintiff requested at trial was $596,525, an increase of slightly more than 11 percent over his purchase price.
Plaintiff's comparison of distressed and arm's-length sales bears some resemblance to a sales comparison approach described in OAR 150-308.205(2)(c), permitting "nontypical market conditions of sale," such as distress, to enter the analysis if "market-based adjustments can be made for the nontypical market condition." OAR 150-308.205-(A)(2)(c). However, the sales comparison approach requires that Plaintiff use "transactions of property comparable to the subject, or adjusted to be comparable." Id. Plaintiff's unadjusted comparison of the subject property, a more than 5,000 square foot riverfront property, with other residential properties scattered throughout the county, varying in size by as much as 3,600 square feet, is not a reliable comparison.
ORS 305.427 places the burden of proof on Plaintiff, who is "the party seeking affirmative relief." To meet the burden of proof, Plaintiff must prove his case by a *Page 6 
preponderance of the evidence. (Id.) A "preponderance of the evidence [is] * * * the more convincing or greater weight."Schaefer v. Dept. of Rev., TC No 4530 at 4 (July 12, 2001) (citingFeves v. Dept. of Revenue, 4 OTR 302 (1971)). Plaintiff did not use any of the valuation approaches prescribed by ORS 308.205(2) and OAR 150-308.205-(A)(2). Plaintiff failed to prove by a preponderance of the evidence that the properties he identified are, in fact, comparable to the subject property. Plaintiff failed to satisfy the burden of proof.
Even though Plaintiff failed to carry its burden of proof and the "burden of going forward with the evidence" has not shifted, the court has jurisdiction to determine the "real market value or correct valuation on the basis of the evidence pleaded by the parties." ORS 305.427; ORS 305.412. Defendant's appraisal report relied on the sales-comparison approach. The sales comparison approach "may be used to value improved properties" such as the subject property. ChambersManagement Corp. and McKenzie River Motors v. Lane County Assessor, TC-MD No 060354D at 6 (Apr 3, 2007) (citing Appraisal Institute, TheAppraisal of Real Estate 335 (12th ed 2001)). In her appraisal report, Bradley concluded the subject property's real market value was $843,977. (Def's Ex A at 16.) The subject property's maximum assessed value was $701,002. (Ptf's Compl at 5.) Bradley testified that, if the court were to accept her real market value determination and order a reduction in the real market value, Plaintiff's 2010-11 property taxes would not be reduced. For a taxpayer to be aggrieved, real market value must be lower than the maximum assessed value. ParksWestsac L.L.C. v. Dept. of Rev., 15 OTR 50, 52 (1999). The court cannot order that the tax roll be changed unless Plaintiff is aggrieved. If the court accepts Defendant's determination of real market value, Plaintiff is not aggrieved. The court cannot order a change to the tax roll. *Page 7 
 III. CONCLUSION
After careful review of the testimony and evidence, the court concludes that Plaintiff failed to carry his burden of proof. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.
Dated this ___ day of ______ 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the date ofthe Decision or this Decision becomes final and cannot be changed.
 This Decision was signed by Presiding Magistrate Jill A. Tanneron September 1, 2011. The court filed and entered this Decisionon September 1, 2011
[1] All references to Oregon Revised Statutes (ORS) are to the 2009 edition.
[2] All references to Oregon Administrative Rules (OAR) are to the 2010 edition.
 *Page 1